**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:20-cr-62

FRANCISCO EDGARDO PALACIOS-ARIAS,
Defendant.

## MEMORANDUM ORDER

This matter comes before Court on the defendant's motion to dismiss the indictment against him. (ECF No. 24.) The defendant, Francisco Edgardo Palacios-Arias, asserts two bases for relief. First, he argues that he received ineffective assistance of counsel at the removal hearing that led to his deportation, rendering that proceeding fundamentally unfair and constitutionally defective.[1] Second, he argues that the illegal reentry statute, 8 U.S.C. § 1326, "violates the equal protection of the laws under the Fifth Amendment's guarantee of due process" because a discriminatory purpose motivated Congress's enactment of the statute. (ECF No. 24, at 1.) Both arguments fail. The Court therefore denies the defendant's motion.

### I. DISCUSSION

#### A. *Ineffective Assistance of Counsel*

On September 14, 2017, after a hearing in which the defendant had retained counsel and testified, an immigration judge ordered the defendant's removal from the United States. (ECF No. 24-14.) The Board of Immigration Appeals ("BIA") dismissed the defendant's appeal on February 28, 2018. (ECF No. 24-17.) The defendant did not appeal that dismissal to the Fourth Circuit.

---

[1] Palacios-Arias's reentry into the United States after that deportation underpins the indictment at issue.

To collaterally attack the removal order underpinning an illegal reentry violation, a defendant must demonstrate that (1) he has exhausted the administrative remedies available to challenge the order; (2) the deportation proceeding "improperly deprived" the defendant of "the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "Because these conditions are listed in the conjunctive, a defendant must show all three in order to prevail." *United States v. Mejia*, 671 F. App'x 161, 161 (4th Cir. 2016).

Here, the defendant argues that the September 2017 hearing "was 'fundamentally unfair' because of [his attorney's] ineffective assistance of counsel." (ECF No. 24, at 8.) He further claims that because of his attorney's ineffectiveness, "the necessary arguments and evidence were not presented to the immigration judge" and an appeal of the BIA's dismissal of his appeal "would have been futile." (*Id.* at 12.) He therefore claims that he did not receive "the opportunity for judicial review." (*Id.*)

The defendant cites no authority to support his argument. Indeed, when presented with the opportunity to create a futility exception to § 1326(d)(2)'s judicial review requirement, courts have refused to do so. For example, in *United States v. Ramirez Mejia*, No. 1:15cr361, 2016 WL 743400, at *6 (E.D. Va. Feb. 23, 2016), *aff'd* 671 F. App'x 161, the court held that a defendant did not lack "the opportunity for judicial review" when the only ground "identifie[d] for his inability to access judicial review [was] futility." *Id.*[2] This Court likewise refuses to create a

---

[2] *See also United States v. Zapata-Cortinas*, 351 F. Supp. 3d 1006, 1024-25 (W.D. Tex. 2018) (rejecting the defendant's futility argument and finding "that Defendant is not excused from satisfying the administrative exhaustion and judicial review requirements in § 1326(d)" (citing *Ramirez Mejia*, 2016 WL 743400, at *5)).

2

futility exception to § 1326(d)'s judicial review requirement. Accordingly, the defendant cannot collaterally attack the validity of the deportation order underpinning his charges.[3]

### B. *Challenge to the Constitutionality of § 1326*

The defendant also argues that the Court should declare the illegal reentry statute unconstitutional because "the original illegal reentry law was enacted with a discriminatory purpose" in 1929. (ECF No. 24, at 13.)

"'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of" immigrants. *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). Indeed, "in matters of immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Johnson v. Whitehead*, 647 F.3d 120, 127 (4th Cir. 2011) (quoting *Fiallo*, 430 U.S. at 792). Unsurprisingly then, courts typically apply rational basis review when considering the constitutionality of immigration laws. *Midi v. Holder*, 566 F.3d 132, 137 (4th Cir. 2009) ("Although courts usually subject national-origin classifications to strict scrutiny, when such classifications involve unadmitted aliens in the immigration context, we subject them only to rational basis review.").[4] Thus, the Court must decide whether § 1326 "is, at a minimum,

---

[3] Because the defendant failed to show that he lacked "the opportunity for judicial review," the Court need not address § 1326(d)'s other two prerequisites for collaterally attacking a deportation order.

[4] The defendant claims that because he asserts "a clear race-based" challenge to § 1326 the Court should not apply rational basis review. (ECF No. 33, at 8.) The Court disagrees for two reasons. First, § 1326 classifies people based on citizenship. *See* 8 U.S.C. § 1326 (making it a crime for "any alien" to illegally reenter the United States); *id.* § 1101 (defining "alien" as "any person not a citizen or national of the United States"). Second, courts generally apply rational basis review to immigration laws, even if the law employs classifications that would receive stricter scrutiny in other contexts. *See Midi*, 566 F.3d at 137.

3

rationally related to legitimate governmental goals." *Wilkins v. Gaddy*, 734 F.3d 344, 348 (4th Cir. 2013).

The government undoubtedly has a legitimate interest in deterring illegal reentry into the United States. Doing so increases the likelihood of compliance with deportation orders and promotes respect for the country's legal immigration process. Moreover, the illegal reentry statute rationally relates to that interest by sanctioning those who disregard a previous deportation order. Thus, § 1326 satisfies rational basis review.

The Supreme Court has held, however, that "[w]hen there is a proof that a discriminatory purpose" motivated Congress to pass the law, a court should subject the law to heightened scrutiny. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).[5] To determine whether a discriminatory purpose motivated Congress to pass a law, a court examines numerous factors, including but not limited to, the law's impact, its historical background, "[t]he specific sequence of events leading up to the challenged decision," the legislature's substantive departures from the normal lawmaking process, and legislative or

---

[5] The government argues that *Arlington Heights* does not apply here because "it is 'not the judicial role . . . to probe and test the justifications for" "congressional immigration policy." (ECF No. 30, at 19 (quoting *Fiallo*, 430 U.S. at 799).) Instead, it urges the Court to end its analysis after finding that § 1326 rationally relates to a legitimate government interest. The Court finds that argument persuasive.

> For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' . . . Because decisions in these matters may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature of the Executive.

*Trump v. Hawaii*, 138 S. Ct. 2392, 2418-19 (2018) (quoting *Fiallo v. Bell*, 430 U.S. at 792; *Matthews v. Diaz*, 426 U.S. 67, 81 (1976)).

The Court need not decide this question, however, because the defendant's challenge to § 1326's constitutionality fails even if the Court applies *Arlington Heights*'s analytical framework.

4

administrative history. *Id.* at 266-68. If a law's challenger produces evidence that a discriminatory purpose motivated a law's passage, then the burden shifts to the government to prove that the legislature would have passed the law "even had the impermissible purpose not been considered." *Id.* at 270 n.21.

The defendant argues that a "close examination of the political context underlying the criminalization of illegal reentry in 1929 reveals a disturbing truth: that racism and eugenics were not only a 'motivating factor' in the legislature's passage of [the Undesirable Aliens Act of 1929]. They were the primary factor." (ECF No. 24, at 16 (quoting *Arlington Heights*, 429 U.S. at 265).) At the hearing on the motion, the defendant's expert summarized parts of the law's legislative and political history. She also detailed the long history of anti-immigrant policies in the United States and the connection between economic downturns and restrictive immigration policies.

That history, however, did little to explain why Congress passed the Immigration and Nationality Act of 1952 ("INA"), the law that replaced the Undesirable Aliens Act of 1929 and that the defendant allegedly violated. *See* Pub. L. No. 82-414, 66 Stat. 229 (codified as amended at 8 U.S.C. § 1326). To challenge the INA using *Arlington Heights*, the defendant must provide evidence that a discriminatory purpose motivated Congress to pass that law. He has not done so here.

The defendant says the Court should examine the discriminatory purpose that he alleges motivated Congress to pass the Undesirable Aliens Act of 1929. He contends that "[t]he government's argument that subsequent reenactments of the law have dissipated the clear discriminatory origins of the [Undesirable Aliens Act of 1929] . . . fails" because "[l]ater enactments of *racially* discriminatory laws and policies do not save them from an Equal

5

Protection challenge."[6] (ECF No. 33, at 9 (emphasis added).) The cases cited by the defendant, however, do not support the proposition the defendant says they do.[7]

Even assuming, however, that the Court can consider the discriminatory purpose that the defendant alleges motivated Congress to pass the Undesirable Aliens Act of 1929, this evidence has only marginal relevance to the defendant's challenge to the INA, passed by Congress twenty-

---

[6]*But see McClesky v. Kemp*, 481 U.S. 279, 298 n.20 (1987) ("[T]he 'historical background of the decision is one evidentiary source' for proof of intentional discrimination. . . . But unless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value. . . . Although the history of racial discrimination in this country is undeniable, we cannot accept official actions taken long ago as evidence of current intent." (citations omitted)); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination. '[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful.'" (alteration in original) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980)); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 215-16 (1983) (refusing to presume that California enacted one law "for the same purposes" as other laws with "a common heritage" because "these other state laws are not before the Court . . . and their pedigree do not taint other parts of the" law at issue).

[7] In support of this claim, the defendant cites two racial discrimination cases in his brief. But, as stated above, this case involves classification based on citizenship, not race. Moreover, neither case establishes that the Court should consider a past law when evaluating whether a subsequent reenactment violates the Equal Protection Clause.

The defendant first cites *United States v. Fordice*, 505 U.S. 717 (1992), in which the Court decided whether Mississippi had complied with the school desegregation order the Court announced in *Brown v. Board of Education*, 349 U.S. 294 (1955) (*Brown II*). The Court did not consult Mississippi's history of segregation to determine whether the state's public university system violated the Equal Protection Clause. Instead, it consulted this history to determine whether the state had satisfactorily complied with *Brown II*. *Id.* at 728-29.

The defendant next cites *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), in which the Court held that Louisiana's and Oregon's laws allowing nonunanimous jury convictions violated the Sixth Amendment. *Id.* at 1394, 1408. The majority "acknowledg[ed] the racist history" of these laws, *id.* at 1401 n.44, but, as Justice Sotomayor noted, Ramos did "not bring an equal protection challenge." *Id.* at 1410 (Sotomayor, J., concurring).

Finally, during argument, the defendant cited *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020), in which the Court reversed a Montana Supreme Court decision that struck down a state scholarship program that excluded students attending religiously affiliated private schools. *Id.* at 2263. The Court based its decision on the Free Exercise clause and did not address whether the state constitutional provision "violate[d] the Equal Protection Clause . . . ." *Id.* at 2265 n.5.

6

three years later. Just as "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," the views of an *earlier* Congress "form a hazardous basis for inferring the intent of" a later one. *United States v. Price*, 361 U.S. 304, 313 (1960).[8] The defendant offers no other evidence—beyond the discriminatory purpose that allegedly motivated Congress's passage of the 1929 law—to support his challenge. Because the defendant has not offered adequate proof that a discriminatory purpose motivated Congress to pass the INA, the Court does not find that it should apply heightened review. *See Arlington Heights*, 429 U.S. at 265-66.

For the sake of thoroughness, even if the Court agreed with the defendant and applied the heightened scrutiny that *Arlington Heights* calls for, the defendant's challenge to § 1326 would still fail. Under the *Arlington Heights* framework, a law survives a constitutional challenge if the government can prove that Congress would have passed the law—here, the INA—even if Congress had not considered "the impermissible purpose." *Id.* at 270 n.21.[9] Here, the defendant offers scant evidence that an impermissible purpose motivated Congress's passage of the INA; he largely confines his evidence and argument to the INA's much older predecessor. And according to the government *and the defendant's own expert*, Congress passed the INA to

---

[8] Notably, the 70th Congress, which passed the Undesirable Aliens Act of 1929, shared only twenty-one members with the 82nd Congress, which passed the INA in 1952. This amounts to a more than 96% turnover, making any inference even more "hazardous." *See 70th Congress (1927–1929): Congress Profiles*, History, Art & Archives: United States House of Representatives, https://history.house.gov/Congressional-Overview/Profiles/70th/ (last visited on Oct. 7, 2020); *82nd Congress (1951–1953): Congress Profiles*, History, Art & Archives: United States House of Representatives, https://history.house.gov/Congressional-Overview/Profiles/82nd/ (last visited on Oct. 7, 2020).

[9] The defendant improperly frames this question as: Would Congress have passed the Undesirable Aliens Act of 1929 if it had not considered the discriminatory purpose? Instead, the Court asks whether Congress would have passed *the INA*, the law that the defendant allegedly violated, had Congress not considered the alleged discriminatory purpose.

7

"deter[] illegal reentry" *and* to protect American workers and the interests of those working legally in the United States. (ECF No. 30, at 17.) Indeed, the defendant's expert acknowledged that Congress regularly passed restrictive immigration laws, including the INA, during economic downturns. The Court cannot ignore this economic motivation for passing the INA. Thus, even under *Arlington Heights*'s heightened standard of review, the defendant's challenge to the constitutionality of § 1362 would fail.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES the defendant's motion to dismiss the indictment against him. (ECF No. 24.)

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 13 October 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

8