# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

v.                                                                              **CASE NO: 5:21cr19/MEW**

**SANTIAGO RODRIGUEZ-POMPA**
a/k/a "Arturo Sanchez-Perez"
                                                                   /

## GOVERNMENT'S SUPPLEMENTAL BRIEF ON DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and files this supplemental brief in response to the Court's motion reconsidering its decision on Defendant's motion to withdraw his guilty plea. (Doc. 42). For the reasons set forth below, the Court should deny Defendant's motion because the Nevada District Court order, on which Defendant's motion relies, is merely a new decision that addressed existing arguments but reached a different result. The development of a recent decision, which is neither novel nor binding, is not a fair and just reason for Defendant to withdraw his plea.

## FACTS

On September 17, 2021, Defendant filed a motion to withdraw his guilty plea "so he can bring a motion to dismiss his indictment on grounds that the statute he is

charged with violating is unconstitutional." (Doc. 31, p. 2).   Defendant offered no argument or legal authority supporting such a claim, other than attaching a non-binding order issued by the Nevada District Court as an example of an "intervening legal development."   (Doc. 31, p. 5; *United States v. Gustavo Carrillo-Lopez*, No. 3:20cr26, Doc. 60 (D. Nv. August 18, 2021) (Exh. 1)).   Defendant did not challenge the adequacy of this Court's Rule 11 plea hearing, at which Defendant waived any defenses that he might have.   Prior to Defendant's plea, the precise constitutional challenge that Defendant would now like to assert had been previously raised and rejected in multiple district courts.   *See U.S. v Palacios-Arias*, No. 3:20cr62, Doc. 37 (E.D. Va. October 13, 2020) (Exh. 2); *U.S. v. Medina Zepeda*, No. 2:20cr57, Doc. 33 (C.D. Cal. January 5, 2021) (Exh. 3); *U.S. v. Gutierrez-Barba*, No. 2:19cr1224, Doc. 105 (D. Az. May 25, 2021) (Exh. 4); *U.S. v. Wence*, No. 3:20cr27, Doc. 79 (D. V.I. June 16, 2021) (Exh. 5); *U.S. v. Machic-Xiap*, No. 3:19cr407, Doc. 57 (D. Or. August 3, 2021) (Exh. 6).

On September 29, 2021, the Court conducted a hearing and granted Defendant's motion to withdraw his guilty plea.   Critical to the Court's ruling was the Court's concern that the recent Nevada District Court order may have addressed novel argument on the constitutionality of Title 8, United States Code, Section 1326, that the previous district court cases may not have explored.   As outlined in more

detail below, the Nevada District Court order was not the first roadmap available to Defendant. Indeed, the district court cases that existed prior to Defendant's plea thoroughly examined each of the constitutional issues addressed by the Nevada District Court. The only difference was the outcome.

## LAW AND ARGUMENT

Defendant bears the burden to demonstrate fair and just reasons for withdrawal of the plea. *See United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). The development of non-binding authority does not change the law or constitute intervening circumstances sufficient to allow Defendant to withdraw a guilty plea, especially where identical challenges to the statute had already been explored by other courts prior to Defendant entering his plea. *See United States v. Ensminger*, 567 F.3d 587, 591, 593-594 (9th Cir. 2009) (stating that the defendant relinquished many rights by pleading guilty, including the right to challenge the validity of the charge, and could not now change his mind solely because prior decisions had rejected the basis for the challenge).

The ultimate issue raised in the Nevada District Court case was whether Section 1326 violates the Equal Protection Clause of the 5th Amendment to the United States Constitution. In Nevada, the parties' argument and the Court's analysis focused on four main areas, including the appropriate standard of review,

whether there was a discriminatory purpose behind the statute, whether the statute had a disparate impact on Latinx persons, and whether the statute would have been enacted absent any racial animus. Prior to the issuance of the Nevada District Court order and Defendant's guilty plea, five prior district court cases addressed the exact same Equal Protection challenge.

As detailed below, each of the four focus areas discussed by the Nevada District Court was thoroughly analyzed by one or more of the other district court cases. Some of the prior district court cases even addressed the exact same legislative history and heard from the same defense experts. Acknowledging that these arguments are not novel, the Nevada District Court itself recognized that the Oregon District Court had already "considered a similar challenge to Section 1326 based on similar evidence presented here." Exh. 1, p. 33. The Nevada court further acknowledged that the Oregon "court detailed an extensive historical record…and conducted a thorough and sensitive inquiry." Id. The Nevada court stated simply that it "disagrees with the conclusion" of the Oregon court. Id. at 34. Thus, the sole difference in the Nevada District Court order and the numerous district court orders issued prior to Defendant's plea is the result.

### I.     Standard of Review

Before examining the constitutionality of Section 1326, the Nevada court addressed whether the appropriate standard of review was rational basis or the heightened review provided in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The five prior district court orders also analyzed the standard of review, thoughtfully considering whether a more deferential, rational basis review was appropriate due to Congress's authority over immigration matters or whether the heightened scrutiny of *Arlington Heights* required a look into the motivations of Congress. See Exh. 2, pp. 3-4; Exh. 3, pp. 2-3; Exh. 4, pp. 3-4; Exh. 5, p. 4; Exh. 6, p. 21. Similar to the Nevada District Court decision, three of the prior district court decisions held that the *Arlington Heights* standard of review was appropriate. See id. While the Eastern District of Virginia Court held that the rational basis standard should apply, it still engaged in an analysis of the discriminatory history of the statute. See Exh. 2, pp. 4-5.

Regardless of the outcomes in the prior decisions, it is clear that the standard of review issue was not novel at the time of Defendant's plea. The appropriate standard of review was thoroughly addressed by the prior district courts, so as to provide a sufficient roadmap for Defendant had he chosen to assert a constitutional challenge prior to entering his plea.

## II. Discriminatory Purpose

In analyzing whether there was a discriminatory purpose behind the enactment of Section 1326, the Nevada District Court addressed the historical background and legislative history of the Undesirable Aliens Act of 1929, which first criminalized unlawful reentry, and the Immigration and Nationality Act of 1952, which codified Title 8, United States Code, Section 1326.   In addressing the issue of discriminatory purpose, the Nevada court (1) heard from defense experts Professor Kelly Lytle Hernández and Professor Benjamin Gonzalez-O'Brien, (2) analyzed President Harry Truman's veto of the 1952 Act, and (3) discussed a letter from the Deputy Attorney General Peyton Ford.   Prior to Defendant's plea, each of these specific arguments had already been raised in, and thoroughly analyzed by, the previous district courts.

Neither the argument nor the record of the Nevada District Court is novel and plainly existed prior to Defendant's plea.

(1)   The Oregon District Court heard from the exact same defense experts, Professor Hernández and Professor Gonzalez-O'Brien, who alleged a record of anti-immigrant sentiment in the 19th and early 20th centuries and attempted to attribute racial animus to the subsequent 1952 Congress, despite a mostly silent legislative history.   See Exh. 6, pp. 8-14, 18.   After extensive

6

analysis, the Oregon District Court concluded that, regardless of whether racial animus was involved in the enactment of the 1929 Act, there was insufficient evidence of a discriminatory purpose behind the 1952 Act. Exh. 6, pp. 27-32. Thus, the result was different, but the breadth and scope of the record surrounding this issue had already been developed and was available to Defendant prior to his plea.

(2)  Both the Oregon District Court and the Virgin Islands District Court had also already addressed the presidential veto before Defendant's plea. The Nevada District Court concluded that the override of President Truman's veto is evidence of the 1952 Congress's racial animus because President Truman vetoed the Act as "legislation which would perpetuate injustices of long standing against many other nations of the world."  See Exh. 1, p. 20. That precise argument was also asserted by defendants in the prior district court cases.  See Exh. 5, pp. 12-13; Exh. 6, pp. 17-18.  Contrary to the Nevada District Court, the Virgin Islands District Court found that some members of the 1952 Congress overrode the President's veto because of the "desirable provisions…[a]mong them…the removal of racial barriers." Exh. 5, p. 13.  Further, the Oregon District Court found that President Truman's criticism of the Act was due to its unfair quotas restricting

7

immigrants from southeastern Europe and Asia, not Latin America. See Exh. 6, pp. 17-18.

(3)  Similar to the Nevada District Court, the previous Oregon District Court also addressed the language and purpose of Deputy Attorney General Ford's letter recommending an addition to the 1952 Act. See Exh. 1, pp. 21-22; Exh. 6, pp. 18, 28. The letter asked Congress to add the phrase "or is anytime found in" to the illegal reentry statute, so those who illegally reenter the country undetected could be prosecuted. Exh. 6, p. 18. The Nevada court inferred that Deputy Attorney General Ford's use of the word "wetback" in the letter, and the 1952 Congress's adoption of the jurisdictional modification, were evidence of the Congress's racial animus. Exh. 1, pp. 21-23. Because Deputy Attorney General Ford was not a member of Congress and the legislative history surrounding the 1952 Act was free of any such racial expressions, the Oregon District Court found Deputy Attorney General Ford's use of the word to be "limited evidence of Congress's purpose in enacting § 1326." Exh. 6, pp. 27, 28.

Thus, other than the outcome, the analysis and record developed in the prior district court cases was substantially similar to that raised in the recent Nevada case.

Still, Defendant chose to plea guilty without raising these arguments until a sixth district court entered a ruling with a different result.

## III. Disparate Impact

As part of its review of the constitutionality of Section 1326, the Nevada District Court analyzed whether the statute has a disparate impact on Latinx individuals. Exh. 1, pp. 8-11. It rejected the Government's response that any disparate impact was merely a matter of geography and the proximity of Latinx persons to the border. Id. at 9-10. The district courts that reviewed Section 1326 prior to Defendant's plea also addressed this precise issue. See Exh. 4, pp. 7-8; Exh. 5, p. 16; Exh. 6, pp. 22-23. The Virgin Islands District Court was similarly skeptical of the Government's proximity argument but acknowledged that "the disparity is explainable on grounds other than race." Exh. 5, p. 17. The Oregon District Court examined prosecution data and again heard from Professor Hernández regarding the disparate impact of Section 1326. Exh. 6, pp. 22-23. Also identical to the record in the Nevada case, the Virgin Islands and Oregon District Courts even analyzed the same case law when discussing the Government's border proximity explanation.[1]

---

[1] Both the Virgin Islands and Oregon District Courts addressed *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891

Again, the disparate impact issue regarding the constitutionality of Section 1326 had been well-developed in multiple cases prior to the Nevada District Court order and prior to Defendant's plea.

### IV.   Subsequent Amendments

Lastly, the Nevada District Court addressed whether the Government could show that Section 1326 would have been enacted absent any racial animus.   Exh. 1, p. 34.   Specifically, the Nevada record analyzed whether subsequent amendments to the 1929 Act cleansed any prior impermissible purpose.   The Government asserted that the need to protect Americans from economic competition, provide national security, and promote foreign relations were valid, nondiscriminatory reasons for the statute.   Id.   Moreover, the Government argued that the statute's subsequent and repeated amendments, which lacked any discriminatory intent, establish that Congress has since enacted Section 1326 without racial animus.   Exh. 1, pp. 34-42.

None of this is novel.   The district court cases that preceded Defendant's plea had also thoroughly addressed the same arguments pertaining to the constitutionality of Section 1326.   See Exh. 2, pp. 7-8; Exh. 5, pp. 14-15; Exh. 6, pp. 29-31.   The

---

(2020), which was subsequently analyzed in the recent Nevada decision.   Exh. 1, p. 11; Exh. 5, p. 17; Exh. 6, p. 23 (footnote 64).

prior district courts reviewed and addressed some of the exact same case law to determine whether subsequent race-neutral amendments cleanse a previously tainted statute.[2]  The arguments heard, evidence and experts presented, and the courts' analysis were strikingly similar to the record established by the prior district court cases, except for the result.  Thus, the Nevada District Court order, on which Defendant's motion to withdraw his plea relies, is merely a new, non-binding decision that addressed an existing roadmap but reached a different result.

## **CONCLUSION**

Defendant should not be permitted to withdraw his plea, where there has been no change in the law, simply because he would now like to assert an argument that had been raised, thoroughly analyzed, and was available to him at the time his plea was entered.  As was well-articulated by the court in *Ensminger*, "[t]he guilty plea is not a placeholder that reserves [Defendant's] right to our criminal system's incentives for acceptance of responsibility unless or until a preferable alternative

---

[2] Both the Nevada and Virgin Islands District Courts addressed *Johnson v. Governor of the State of Florida*, 405 F.3d 1214, 1223-1225 (11th Cir. 2005) (holding that reenactment of a law for race-neutral reasons eliminates the taint of a prior allegedly discriminatory provision).  Exh. 1, pp. 39-40; Exh. 5, pp. 14-15.  Both the Nevada and Oregon District Courts addressed *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) and *Espinoza v. Montana Department of Revenue*, 140 S. Ct. 2246 (2020) (discussing the reenactment of originally tainted legislation).  Exh. 1, p. 41; Exh. 6, p. 31.

later arises. Rather it is a 'grave and solemn act,' which is 'accepted only with care and discernment.' Once the plea is accepted, permitting withdrawal is, as it ought to be, the exception, not an automatic right." *Id.* at 593 (quoting *United States v. Hyde*, 520 U.S. 670, 677, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997)).

For the reasons stated above, Defendant has failed to provide a fair and just reason to withdraw his plea. The Government requests that the Court deny Defendant's motion.

Respectfully submitted,

JASON R. COODY
Acting United States Attorney

/s/ Amanda Gordon

AMANDA GORDON
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 377340
21 East Garden Street, Suite 400
Pensacola, Florida 32502
Phone: 850.444.4000
Email: amanda.gordon@usdoj.gov

## CERTIFICATE OF WORD COUNT COMPLIANCE

I HEREBY CERTIFY there are 2414 words in this supplemental brief filed by the Government.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Defendant, on this 8th day of October, 2021.

/s/ Amanda Gordon

AMANDA GORDON
Assistant United States Attorney