**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**                                            **Case No.: 5:21-cr-00019-MW-MJF**

**SANTIAGO RODRIGUEZ-POMPA,**

   **Defendant.**
                                                        /

**SANTIAGO RODRIGUEZ-POMPA'S SENTENCING MEMORANDUM**

Defendant Santiago Rodriguez-Pompa hereby requests this court impose a sentence that is sufficient but not greater-than-necessary to comply with the goals of sentencing established in 18 U.S.C. § 3353(a). *See generally Gall v. United States*, 552 U.S. 38 (2007), *and Rita v. United States*, 551 U.S. 338 (2007)[1].

1.   Mr. Rodriguez-Pompa's case is scheduled for sentencing on February 28, 2022.  The final pre-sentence investigation report was filed on November 18, 2021.  The sentence to be imposed is left solely to the discretion of the sentencing court.

2.   When judges sentence outside the guideline range and provide reasons, they are providing relevant information to the Sentencing Commission so that the Guidelines can constructively evolve over time.  The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. *Nelson v. U.S.*, 555 U.S. 350 (2009).

3.   The history and characteristics of Santiago Rodriguez-Pompa are unique and tend to

---

[1] *See also United States v. Foreman*, 436 F.3d 638, 344 n.1 (6th Cir. 2006)("It is worth noting that a district court's job is not to impose a 'reasonable' sentence.  Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)").

establish the propriety of a lenient sentence.  When Mr. Rodriguez-Pompa's was ten years old: his father was murdered.   Mr. Rodriguez-Pompa was present.  He witnessed the murder.  The murder was committed with a firearm.  Mr. Rodriguez-Pompa is one of seven siblings.  He was the only sibling who witnessed the murder.  At ten years of age, Santiago Rodriguez-Pompa had to return to his widowed mother and six siblings having been present and helpless to stop his own father's murder or render his father aid.  This is an adverse childhood experience that few humans have the tragic, gruesome and unshakeable misfortune of bearing.  Following his father's murder, Santiago Rodriguez-Pompa was raised by his widowed mother.  In the wake of the murder, his mother sold the family farm (about 235 acres) and relocated to a different area in Mexico.

4.  Santiago Rodriguez-Pompa completed only third grade while living with his family in Mexico.  Depending on the reporter, he was anywhere from 13 to 15 years of age when he first came to the United States.  He has worked in the construction industry completing manual labor tasks such as siding, framing, sheet rock and construction clean-up.  This work has been completed off-and-on, in the Florida heat, since Mr. Rodriguez-Pompa was a teenager.

5.  Santiago Rodriguez-Pompa has a committed, long-term relationship common-law wife.  He has two young children.   "Arturo Sanchez-Perez" was a name that Santiago Rodriguez-Pompa used to operate a construction-related business.  He paid his employees.  He paid his taxes.  With the money he earned in construction, Mr. Rodriguez-Pompa sent regular funds back to Mexico to support his mother and an older child he fathered in a previous relationship.

6.  Mr. Rodriguez-Pompa has been in federal custody continuously since June 30, 2021.  In the letters submitted to the court in support of a lenient sentence: this court should note that Santiago Rodriguez-Pompa is referred to throughout as caring, church-involved, family-oriented and hard-working.  The oldest of Mr. Rodriguez-Pompa's two children began kindergarten since Santiago's June 30th incarceration.

7.  While Santiago Rodriguez-Pompa is the patriarch of a family, counsel does not expect a large gallery presence at sentencing proceedings.  Mr. Rodriguez-Pompa has maintained that he got into the criminal activity herein on his own and has expressed a desire to be sentenced largely alone, without subjecting family members to the stress or humiliation of a criminal sentencing.  Santiago Rodriguez-Pompa's common-law wife has written a letter to the court (contemporaneously submitted) explaining the family's wishes.  She has also now retro-migrated out of the United States. Some adult family members may attend sentencing but Mr. Rodriguez-Pompa, by his own choice and the preferences of his family, plans to face the court largely alone.

8.  The <u>nature and circumstances of the offense</u> tend to establish the propriety of a more lenient sentence.  About 18 months prior to his arrest, Santiago Rodriguez-Pompa illegally crossed the southern US border to return to his common-law wife and two young children.  This involved traveling to the Mexican side of the US border near Arizona and paying organized criminals to eventually smuggle him into the United States.  Santiago Rodriguez-Pompa spent four nights in the desert with gangsters knowing that the trip was inherently dangerous and could result in his being kidnapped (or worse).  Mr. Rodriguez-Pompa understood this cross-desert, illegal trek out of hope and love for his young family.  This was undertaken to provide a better future for his two children.  This was also undertaken for an opportunity to work and provide services to construction customers performing physical labor which many Americans reject.  The criminal activity before this court was both victimless and non-violent.

9.  <u>Seriousness of the offense</u> can be measured by "the community view of the gravity of the offense" or the "public concern generated by the offense." 28 U.S.C. § 994(c)(4) and (5).  In this case, it cannot be argued that public concern or view of the gravity of the offense is particularly high where able-bodied adults are willing to perform physical labor that others refuse.  A national survey by the Pew Research Center finds that nearly seven-in-ten adults (69%) now say that there

should be a way for undocumented immigrants who are now living in the U.S. to stay in the country legally if certain requirements are met.

10.   This court should consider the <u>deterrence</u> to criminal conduct to which Rodriguez-Pompa's sentence might contribute.  One District Judge, in a child pornography case, reviewed empirical evidence regarding the continuing increase in the number of drug and child pornography prosecutions despite stiff federal sentences, and concluded as follows:

> [t]here is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet… This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of.

*United States v. Beiermann*, 599 F. Supp. 2d 1087, 1103-1104 (N.D. Iowa 2009).

11.   Empirical research shows no relationship between sentence length and deterrence. There is less crime in society with an operative criminal justice system than there would be without one.  The question becomes whether any individual punishment results in increased deterrence and thus a decreased crime rate.  There is no evidence that increases in sentence length reduce crime through deterrence. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).  Any relationship between prison sentence length and deterrence seems especially attenuated where, as here, those who we hope to deter do not speak or language or have any realistic way to even become aware of the sentences which United States District Courts impose.

12.   A long prison sentence is not required to <u>protect the public from future crimes</u> which might be committed by Rodriguez-Pompa.  Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is of greatest practical concern and is the most

capable of being measured.  Mr. Rogriguez-Pompa's crime reflects the crossing of a geographical border in order to work for the public in jobs which many Americans refuse to engage.  His crime is a crime of failure to comply with immigration requirements.  There is no public protection element to the offense before this Court.  The presentence investigation report states it plainly in paragraph 15: "There are no identifiable victims."  Separately, Rodriguez-Pompa's family has now retro-migrated to Central America.  Counsel has provided documentation to the Government including airline boarding passes and stamped passports.  Counsel has also provided both the Government and this Court with a video made featuring the Defendant's wife and his children in El Salvador in February, 2022.

13.  The Guidelines at U.S.S.G. § 2L1.2 cmt. n. 8 inform the court that there may be cases in which a downward departure may be appropriate on the basis of cultural assimilation.  That departure should be considered only in cases where the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, those cultural ties provided the primary motivation for the defendant's illegal reentry and such a departure is not likely to increase the risk of the public from further crimes of the defendant.

14.  In determining the appropriateness of such a departure; the court should consider the age in childhood at which the defendant began residing continuously in the United States, whether and for how long the defendant attended school in the United States, the duration of the defendant's continued residence in the United States, the duration of the defendant's presence outside the united States, the nature and extent of the defendant's familial and cultural ties inside the United States and the nature and extent of such ties outside the United States, the seriousness of the defendant's criminal history and whether the defendant engaged in additional criminal activity after illegally reentering the country.

15.  As part of the sentence requested by the defense, counsel will be asking that the court

make a finding that Defendant Rodriguez-Pompa is unable to pay and is not likely to become able to pay a stiff fine. See generally § 5E1.2.  Mr. Rodriguez-Pompa will be requesting the court waive the fine and impose an alternative sanction.  There is no indication in the final PSR which would lead a reader to believe Santiago Rodriguez-Pompa would have the present or future ability to pay a fine.

CONCLUSION

16.  This sentencing presents this court with an unfortunate set of circumstances.  These circumstances are presented by Rodriguez-Pompa's (and his family's) history and characteristics. The court is urged to fashion a sentence that fits the defendant's peculiar life situation.  A sentence involving a minimal prison sentence followed by supervised release would address both retribution and deterrence.  Prison should be reserved for those whom we fear: not those with whom we are angry.  Mr. Rodriguez-Pompa requests the court to consider a sentence which reflects his cultural assimilation to the United States of America and the relatively universal, benign underpinnings of his criminal conduct.

17.  Santiago Rodriguez-Pompa's children are living their lives knowing that their father is incarcerated.  There is a drastically more painful circumstance: living with no father at all.  That circumstance was seared on Santiago's experience at the age of ten.  Mr. Rodriguez-Pompa stands before the court charged with a crime he committed to avoid that outcome.  The defendant's young family and his assimilation explain the propensity to reoffend and it mitigates his conduct.  That explanation has now been removed from consideration by way of his family's voluntary retro-migration.  In the past Santiago returned to the United States because he was returning back home. Santiago's family has now voluntarily retro-migrated to Central America and Santiago's basis for returning home no longer exists.

6

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been sent via email to Amanda Gordon, AUSA, Amanda.Gordon@usdoj.gov on this twenty-first (21st) day of February, 2022.

Respectfully submitted,

*/s/ Luke Newman*

_____

Luke Newman
Luke Newman, P.A.
908 Thomasville Road
Tallahassee, Florida 32303
850.224.4444 (office)
850.224.9335 (fax)
luke@lukenewmanlaw.com
Fla. Bar No. 0859281
*Attorney for the Defendant*